**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **ROBERT C. ZEIDLER,** | ) | **CASE NO. 1:24CV621** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ALLSTATE VEHICLE & PROPERTY,** | ) | **OPINION AND ORDER** |
| **INS. CO., et al.,** | ) | |
| **Defendants.** | ) | |


**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion of Defendants Allstate Vehicle and

Property Insurance Company and Allstate Fire and Casualty Insurance Company for Partial

Summary Judgment (ECF DKT #36).  For the following reasons, the Court grants the Motion

in part.

**I. BACKGROUND**

In his Complaint, Plaintiff Robert Zeidler alleges he is an insured of Defendants Allstate

Vehicle & Property Insurance Company and Allstate Fire and Casualty Insurance Company.

("Allstate") under policies that cover his residence and automobile.  Zeidler owns property made

up of a residence and a separate garage located at 10835 Washington Street in Chagrin Falls,

Ohio 44023.  On March 12, 2023, a fire damaged the residence, garage and personal property

within both structures.  While Allstate paid out on the structural claim, it allegedly failed to

reimburse Zeidler for a substantial portion of the damage to the contents within the garage and residence.  Moreover, Zeidler claims that the adjuster assigned to his claim abruptly ceased communicating with him.  The Allstate home insurance policy provided additional coverage for living expenses (ALE) which included any rental expenses while the home and garage were being repaired.  Allstate only covered a portion of the living expenses Zeidler incurred.

Zeidler also was insured under an Allstate vehicle insurance policy, with an effective date of May 29, 2023.  On June 3, 2023, Zeidler's 2008 F250 Ford Pickup truck sustained damages.  Allstate sent Zeidler to Crash Champions in Bedford Heights for a damages estimate which Crash Champions assessed at $4,900.66.  Zeidler then had a second assessment done by Highway Auto Center which estimated the damages at $5,387.99.  Despite these assessments Allstate without explanation only offered $4,010.00 to cover the damages.[1]  Zeidler asserts claims for Breach of Contract and Bad Faith on both the Home and Vehicle Policies and seeks punitive damages.

**Allstate's Motion for Partial Summary Judgment**

Allstate moves the Court for judgment solely on Zeidler's Bad Faith claims because he cannot show that Allstate's coverage decisions had no basis.  Under Ohio law, if the defendants' coverage decisions are "fairly debatable" the Court must grant summary judgment in their favor.  Furthermore, Zeidler provides no evidence that he suffered damages solely related to Allstate's alleged bad faith.  Finally, Allstate moves for judgment on Zeidler's Punitive Damages claim

---

[1]There is a discrepancy about the amount Allstate offered to repair the truck.  In his deposition (ECF DKT #34-1), Zeidler testifies that Allstate made a $3900 offer; but in the Complaint and in his Declaration (ECF DKT #37-1, ¶33), Zeidler says the offer was $4010.  In any event, Zeidler did not accept the offer which was less than all the repair estimates he obtained.

because there can be no recovery for punitive damages absent a viable claim for bad faith.

**Zeidler's Opposition to Allstate's Motion**

Zeidler asserts that he has provided Allstate with three separate damage estimates on his truck; yet without any evidence or explanation, Allstate offered nearly one thousand dollars less than the lowest estimate. In fact, that lowest estimate was provided by the very entity recommended by Allstate to Zeidler. While the difference is only a thousand dollars, failure to pay the actual costs of repairs without any explanation is a textbook example of bad faith. Moreover, because Allstate failed to offer any explanation for refusing to pay the estimated damage costs, Allstate cannot show that the offered coverage amount is fairly debatable. Therefore, Zeidler argues that the Court should deny Allstate's Motion regarding the vehicle policy Bad Faith claim.

Zeidler acknowledges that the Homeowners' Policy claim is more complex since it involves multiple coverage clauses including: Dwelling Coverage; Other Structures Coverage; Contents Coverage; Additional Living Expenses Coverage; and Debris Removal Coverage. Zeidler recognizes that Allstate paid substantial amounts on some coverage claims. However, Allstate failed to explain why it refused to pay out the full amount for actual losses he incurred; and that constitutes bad faith.

**II. LAW AND ANALYSIS**

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue

3

of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)

(quoting *Anderson*, 477 U.S. at 251-52).

## Bad Faith and Ohio Law

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hastings Mut. Ins. Co. v. Mengel Dairy Farms,* LLC, 461 F.Supp. 3d 655, 660 (N.D. Ohio 2020), quoting *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001) (citations omitted). Because this matter is before the Court on its diversity jurisdiction, the Court applies Ohio law to the Allstate policies at issue.

In Ohio, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315, 1319 (1983). "An insurance provider acts in bad faith when "its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.' " *Hastings,* 461 F.Supp.3d at 665, quoting *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397, 400 (1994). "[I]ntent is not an element of the 'reasonable justification' standard." *Fair v. State Farm Fire and Casualty Co.,* 426 F. Supp. 2d 672, 677-78 (N.D. Ohio 2006) (citing *Zoppo*, 644 N.E.2d at 397, 400).

"Summary judgment in favor of the insurer is appropriate whe[n], viewing the evidence in the light most favorable to the insured, the claim was fairly debatable and the refusal was premised on the status of the law at the time or the facts that gave rise to the claim." *B-T Dissolution, Inc. v. Provident Life & Accident Ins. Co.,* 123 F.App'x 159, 164 (6th Cir. 2004). "Mere negligence of an insurer is insufficient to sustain a bad faith claim." *Hastings,* 461 F. Supp. at 665, citing *Klein v. State Farm Fire & Casualty,* 250 F.App'x 150, 156-57 (6th Cir. 2007). "Under Ohio law, the burden establishing bad faith is on the insured." *Marsteller v.*

5

*Security of America Life Ins. Co., No.* 3:01CV7258, 2002 WL 31086111, at *7 (N.D. Ohio Sept. 12, 2002).

**<u>Claim for Truck Loss</u>**

Zeidler's 2008 F250 truck was insured under an Allstate Vehicle & Property Policy.  On June 3, 2023, Zeidler's truck was stored in a storage facility when a separate trailer rolled off blocks striking the rear of Zeidler's truck.  Zeidler obtained repair estimates that averaged approximately $5,000.00.  Allstate calculated the claim at $3900.00/$4010.00, despite the fact that the estimate from Allstate's own recommended garage totaled $4900.66.  At his deposition, Zeidler could not recall Allstate's explanation for the lower estimate except that Allstate thought he could have installed a less costly muffler.

> Q: Okay. But someone did verbally try to explain to you where they came up with the value; is that correct?
>
> A.  That's a skewed representation. They tried to explain why they weren't paying it. They weren't really explaining what the reasoning behind their number was. They were not saying, this is why we came up with this lower number. They're simply saying, this is all we're willing to give you and here's why.
>
> Q: And what was the "why" part?
>
> A: They didn't feel it was worth that much and that this is the best they were willing to offer. That's, to my recollection, the best that I can give you.
>
> Q: Okay.
>
> A: One of the items that I do remember as some sort of discrepancy was that you could put a different muffler on that would cost less money. So you didn't have to put the same one on, and therefore they're not going to pay me for the one that was [sic] we're replacing with the exact same thing ...

(ECF # 34-1 pp. 67-68).

Zeidler has not accepted the offered payment, has not had the vehicle repaired and as of

6

the time of his deposition, continues driving the truck as his primary vehicle.  (*Id.* at 33, 36).

Allstate has produced no evidence in support of the estimate of Zeidler's truck damages outside of citing Zeidler's own deposition testimony.

"A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner."  *Brown v. Nationwide Mut. Fire Ins. Co.,* 174 Ohio App.3d 694, 2008-Ohio-174, 884 N.E.2d 617, ¶ 45 (10th Dist. Jan. 22, 2008).  In the context of bad faith, courts have equated the terms "arbitrary" and "capricious," stating "[t]he term 'arbitrary' means 'without fair, solid, and substantial cause and without reason given; without any reasonable cause; * * * fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic.' " *Captain v. United Ohio Ins. Co.,* 2010-Ohio-2691, 2010 WL 2354025, ¶ 30 (4th Dist. Jun. 3, 2010), quoting *4D Investments, Inc. v. Oxford*, 1999 WL 8357, *2 (12th Dist. Jan. 11, 1999).

An insurer that improperly fails to pay a valid claim may be liable in tort for bad faith. *Hoskins,* 6 Ohio St.3d at 276, 452 N.E.2d 1315; *Beever v. Cincinnati Life Ins. Co.,* 10th Dist. Franklin Nos. 02 AP–543, 02 AP–544, 2003-Ohio-2942, 2003 WL 21321428, ¶ 20.  Even where a claim is ultimately paid, the insurer's "foot-dragging" in handling and evaluating the claim may support a bad faith cause of action.  *Drouard v. United Servs. Auto. Assn.,* 6th Dist. Lucas Cty. No. L–061275, 2007-Ohio-1049, 2007 WL 707532, ¶ 16.

Here, Allstate offers no evidence supporting the refusal to pay the lowest estimate provided by its own recommended auto repair shop.  Allstate offers no cost breakdown which might provide some rational basis for the lower assessment.  In the absence of any contrary

evidence or some rationale for the lower estimate, the Court finds genuine issues of fact militate against summary judgment in Allstate's favor on Zeidler's Bad Faith claim for the truck estimate.

However, the Court's inquiry does not end there.  "An insurer 'who acts in bad faith is liable for those compensatory damages flowing from the bad faith conduct of the insurer[.]' " *Asmaro v. Jefferson Ins. Co. of New York*, 62 Ohio App. 3d 110, 118, 574 N.E.2d 1118, 1123 (1989), quoting *Zoppo,* 644 N.E.2d at 402.  These "extra-contractual damages" are "actual damages over and above those covered by the insurance contract sustained by the insured as a consequence of the insurer's bad faith[.]" *Asmaro,* 62 Ohio App.3d 110, 574 N.E.2d at 1123. These damages "encompass such things as interest on the amount of money wrongfully withheld under the contract and damages resulting from the insured's inability to pay for needed repairs." *Id.* "Further, if bad faith is proven, punitive damages are available upon a showing of actual malice." *Id.*

Allstate contends that Zeidler's Bad Faith allegations on his truck claim must fail because he has produced no evidence of any damages outside those covered by his Breach of Contract claim.  In response, Zeidler points to his own Declaration where he attests to spending over 1,000 hours at a billing rate of $125/hour (ECF DKT #37-1 at ¶ 25) and incurring costs and expenses in his efforts to obtain the coverage he was entitled to under Allstate's policies.  He was forced to spend inordinate amounts of time, energy and money dealing with the insurance dispute rather than working at his construction business.  (ECF DKT #37-1 at ¶¶ 13, 25).  Moreover, a jury can determine whether the stress Zeidler suffered due to the many months spent fighting for coverage entitles him to extra-contractual damages caused by Allstate's lack of good faith.  See *LeForge v. Nationwide Mut. Fire. Ins. Co. ,* 82 Ohio App.3d 692, 701 612 (12th Dist. Oct. 5, 1992) (jury

could determine from common knowledge that plaintiffs would "suffer mental anguish" as a result of losing all their belongings, suffering financial problems, living in unsuitable housing and more). The fact-finder could determine how much time and income was lost by Zeidler while fighting for coverage for damage to his primary vehicle.

Zeidler's evidence creates sufficient genuine issues of fact to defeat Allstate's Motion for Summary Judgment regarding Zeidler's Bad Faith Claim related to the Allstate Vehicle & Property Policy.

**Punitive Damages**

If a plaintiff can establish that an insurer breached its duty of good faith in refusing to pay a claim, he may be able to recover punitive damages upon a showing that the refusal to pay the claim was done in "conscious disregard" for the insured's rights. *See Zoppo*, 71 Ohio St.3d at 557-558, 644 N.E.2d 397. Punitive damage awards must be supported by clear and convincing evidence. *See* Ohio Rev. Code § 2315.21(D)(4).

In the insurance context, such damages are warranted "only upon a showing of actual malice." *Winters Enters., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2021 U.S. Dist. LEXIS 175079, at *40, 2021 WL 4193213 (S.D. Ohio Sept. 15, 2021). Actual malice exists when the defendant acts with "ill will, hatred or spirit of revenge" or performs such "reckless, wanton, wilful [sic] and gross acts" that malice can be inferred from the conduct and surrounding circumstances. *Hoskins*, 6 Ohio St. 3d 272, 277, 452 N.E.2d 1315 (1983). A plaintiff may show "actual malice" by showing that the insurer acted with "a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm." *Bigler v. Pers. Serv. Ins. Co.*, 2014-Ohio-1467, at ¶166 (7th Dist. Ct. App.) (citing *Calmes v. Goodyear Tire &*

*Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416 (1991)).

The Ohio Supreme Court upheld a finding that an insurer acted with "conscious disregard" when the insurer breached "its affirmative duty to conduct an adequate investigation" by conducting "a one-sided inquiry" that failed to adequately review or develop evidence concerning the claim. *Bell v. Zurich Am. Ins. Co.*, 156 F. Supp. 3d 884, 891 (N.D. Ohio 2015).

Allstate offers no evidence of an inspection or separate investigation of the truck damage nor any reason for disregarding its own recommended repair shop estimate. All the Court has before it for consideration is the repair estimates and Zeidler's testimony that he was told another muffler would be less costly. Viewing this evidence in the insured's favor, the Court finds the inadequate handling of the insurance claim would be sufficient to allow the presentation of a punitive damages claim to the jury.

## Home Fire Loss Claim

Zeidler's residence, separate building (*i.e.*, 2.5-car garage and 2,000 square-foot "hobby shop") and the contents of both structures were insured against loss and casualty under an Allstate Homeowners' Policy. A fire occurred on Zeidler's property during the policy period on March 12, 2023, causing considerable damage to the garage structure and the residence. In fact, the fire department brought in an excavator and knocked down the garage to suppress the spread of the fire. Zeidler filed a claim that day. Zeidler contends that Allstate failed to thoroughly investigate his claims and all avenues to coverage; failed to timely pay insurance benefits; delayed processing his claims; failed to respond to his multiple inquiries; and failed to make reasonable offers of payment (and in some instances, no offers) under the Policy.

Zeidler concedes that the issues surrounding the Homeowner's Policy are complex. By

10

the same token, Allstate's review process was protracted; its responses were slow and delayed; both the insured and the adjusters faced confusion over Allstate's own spreadsheets and claims forms; and complications arose due to multiple assigned adjusters with minimal internal communication.  With this backdrop, the Court will address each relevant coverage category.

Under the Policy, the limits of Coverage A - Dwelling Protection are $405,027.  Allstate paid $47,522.32 and Zeidler claims an additional $30,123.55 is due.  The limits of Coverage B - Other Structures are $101,257.  Allstate paid $106,319.85 (which includes an added 5% of the Coverage B limits for debris removal).  Nothing further is sought by Zeidler under Coverage B. The limits for Coverage C - Personal Property/Contents are $303,771.  Allstate paid $217,594.44 and Zeidler claims a further amount of $101,365 and 5% more for debris removal.  Under Section I - Additional Living Expenses (ALE), an insured can receive up to 24 months of expenses not to exceed  $60,755.  Allstate paid for 10 months of rental charges at $2,000 per month or $20,000.  Zeidler claims at least $30,400 is still owed.

As for Coverage A, Allstate points out that there is no proof of any pre-suit request for Zeidler's $30,123.55 figure that was ignored or disregarded in the review process.  According to Zeidler's Declaration, further coverage has been demanded under Coverage A (ECF DKT #37-1, ¶ 16) and a chart of his claims is provided at ¶ 26.  The Declaration is dated March 16, 2026, over two years after the lawsuit was instituted in Geauga County Common Pleas Court.

Zeidler contends that debris removal is payable under Coverage A and Coverage C, as it was under Coverage B.  However, pursuant to the Policy, the cost of debris removal is available only if the full limits have been paid out under the applicable coverage.  (See Policy Section I, 3).

We will pay reasonable expenses you incur to remove

> debris of covered property damaged by a loss we cover.
> If the loss to the covered property and the cost of debris
> removal are more than the Limit Of Liability shown on
> the Policy Declarations for the covered property, we
> will pay up to an additional 5% of that limit for debris
> removal.

Full limits were paid out under Coverage B, but not under Coverage A or C. Therefore, at this stage, the payment for debris removal costs is not triggered.

The limits of Coverage B - Other Structures have been paid in full; so, the Court need not address it in the instant Bad Faith claim analysis.

In his depositions on December 9, 2024 (ECF DKT #34-1) and July 1, 2025 (ECF DKT #35-1), Zeidler testified regarding Section I - Additional Living Expenses (ALE), that two months of the storage lease with WDM Auburn, LLC remains unpaid. Yet, Zeidler also testified that he did excavating work for WDM and used that as agreed compensation for the unpaid portion of the lease. (ECF DKT #34-1, p. 41). Also, Zeidler argues that Allstate owes payment for the time that items were stored at his business property. He testified that he does not remember a specific number; but insists that he sent Allstate information about comparable rental rates. (ECF DKT #34-1, pp. 36-37). In his subsequent deposition, Zeidler was asked if a quantified rental amount for storage at his property was ever presented to Allstate. He responded that he did not know if his prior attorney provided that amount or ever calculated a dollar figure. (ECF DKT #35-1, p. 50). These facts demonstrate the existence of a legitimate debate regarding Additional Living Expenses payable under the Homeowner's Policy.

For Coverage C - Personal Property/Contents, Allstate paid over $217,000 of the $303,771 Policy limits on Zeidler's claim. Zeidler states that he made an initial claim at the end

12

of March 2023 for approximately $400,000 worth of contents loss; and over the following year, he provided the adjuster, William Moore, with a total contents loss in excess of $600,000.  An additional list of construction items and supplies intended for remodeling his home was also given to Allstate for review.  (Declaration, ECF DKT #37-1, ¶ 20).  The evidence shows that Zeidler emailed adjuster Moore in August of 2023 with hundreds of items that needed to go on the contents list.  (ECF DKT #34-1, p. 62).  In September of 2023, Zeidler emailed that he was still in the process of compiling the list, that could approach 1,000 items.  (*Id*. at 63).  As of the date of the December 2024 deposition, Zeidler was continuing to add items to the growing list. In the July 1, 2025 deposition, Zeidler testified that he added to the list even at the time the lawsuit was filed (ECF DKT #35-1, p. 53), which coincided with the time the Allstate adjusters ceased communicating directly with Zeidler.  Allstate engaged a third-party adjuster that performed an evaluation and produced a summary of the Coverage C claim on February 6, 2024. At that point, Allstate paid out $217,594.44.  Zeidler responded and pointed out discrepancies and errors in the claim summary; but communications with the Allstate adjusters had terminated. According to the testimony of Allstate's 30(b)(6) witness, Shannon Lariviere, once the insured is represented by counsel Allstate communicates with the attorney only.  However, the insured is not denied online access to the claim file.  (ECF DKT #33-1).

The burden is on the plaintiff to establish bad faith; it is not a defendant's burden to establish it acted in good faith.  *Hoskins*, 452 N.E.2d at 1320.  An aggrieved insured must respond to the insurer's motion "with evidence which tends to show that the insurer had no reasonable justification for refusing the claim."  *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936, 943 (1992).

Bad-faith handling of an insurance claim exists "only if the record shows that there were no circumstances that created a reasonable justification for the insurer's actions." *Hartman v. Conesco Senior Health Ins. Co.*, No. 3:08-CV-099, 2010 WL 1981014, at *8 (S.D. Ohio May 18, 2010) (citing *TOL Aviation, Inc. v. Intercargo Ins. Co.*, Nos. L-05-1308 and L-06-1050, 2006 WL 3334556, at *11 (Ohio Ct. App. Nov. 17, 2006)).  The question is not whether the denial of the claim (or, in this case, alleged underpayment) was correct, but whether the insurer's action on the claim was "arbitrary and capricious." *Corbo Properties, Ltd. v. Seneca Ins. Co., Inc.*, 771 F. Supp. 2d 877, 881-882 (N.D.Ohio 2011) (citing *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992)).

The Court recognizes that Allstate's handling of Zeidler's fire loss claim was a long, arduous process.  There were delayed responses, multiple adjusters, confusion over how to contact the adjusters, as well as confusion over the spreadsheets Allstate provided to its insured.  A cause-and-origin adjuster went to the site; but it is unknown if any Allstate claims adjuster inspected the damage at Zeidler's property.  Nevertheless, the Court finds that inefficiency and negligence do not equate to bad faith.   *See, Hastings,* 461 F. Supp. at 665.

Allstate paid the policy limits on the Other Structures Coverage.  Whether Allstate wrongfully underpaid on Coverage A - Dwelling Protection is not certain since the evidence reflects that Zeidler's additional damages were not presented to Allstate prior to the initiation of the lawsuit.  With regard to Additional Living Expenses, there are questions as to whether some portion of rental cost was forgiven and whether Zeidler can substantiate the value of storing items on his own business premises.  The Policy terms may prohibit any further claim by Zeidler for debris removal costs.  Finally, as for the Personal Property/Contents Coverage claim, an

independent third-party adjuster was retained to evaluate Zeidler's damages; over $200,000 was paid for contents loss; and Zeidler's list of damaged items has continued to evolve even after suit was filed.

Therefore, there is evidence supporting a reasonable justification for each aspect of the Homeowner's Policy Coverage payments to date.  The law does not require Allstate's evaluation to be correct, as long as it is not arbitrary and capricious.  The evidence does not clearly and convincingly demonstrate bad-faith claims handling.  Allstate is entitled to judgment in its favor and thus, there is no reason to analyze extra-contractual damages or punitive damages.

### III. CONCLUSION

For these reasons, the Motion of Defendants Allstate Vehicle & Property Insurance Company and Allstate Fire and Casualty Insurance Company for Partial Summary Judgment (ECF DKT #36) on Plaintiff Robert C. Zeidler's Bad Faith Claims is granted in part as to the Homeowner's Policy fire loss and denied in part as to the Vehicle Policy truck damage claim.


**IT IS SO ORDERED.**

**DATE: 6/9/2026**               **s/Christopher A. Boyko**
                                 **CHRISTOPHER A. BOYKO**
                                 **United States District Judge**